HELEN J. BEETON et al.

*v.*

REUBEN SIMPSON and CHARLES H. WOOD, executors of and trustees under the will of Henry C. Vreeland, deceased.

A testator devised and bequeathed the residue of his estate to his executors in trust, to hold, manage and apply the "net income" therefrom—that is, the "rents, interest, issues and profits after paying taxes and expenses," to specified purposes, and gave them power to sell real estate and directed them to invest the proceeds of such sale, and afterwards, by codicil, further directed them to pay the encumbrances upon his real estate out of the "whole income" of his estate before the application of the "net income," as they were originally directed in the will, and thereafter to make such application of the net income. The executors sold the real estate and paid the encumbrances out of the proceeds of such sale. They then invested the remainder of the proceeds of sale, and insisted upon accumulating the income to reimburse the estate for the proceeds of sale expended in payment of the encumbrances. Upon a bill filed to compel them to pay the net income to the *cestuis que trustent*—*Held*, that the retention and accumulation of the net income for the purpose of reimbursing the estate is proper ; that the proceeds of the sale of the real estate constituted part of the principal, and not part of the income of the estate.

On bill and answer.

*Mr. Charles L. Carrick*, for the complainants.

*Mr. James S. Erwin*, for the defendants.

THE CHANCELLOR.

Henry C. Vreeland died in September, 1887, having made his will in January of that year, and a codicil to it in the following August. By the will, after making provisions unimportant in this inquiry, he devised and bequeathed all the residue of his estate to his executors, the defendants herein, in trust, to hold and manage it and invest the proceeds of sales thereof upon bond and mortgage on real estate, and to pay the net income of one-third of it to his sister Helen J. Beeton during her natural life,

and upon her decease, leaving a child or children, to pay and apply the whole or so much of said income as may be necessary for the support, maintenance and education of such child or children, until he, she or they should arrive at the age of twenty-one years, and as each child should arrive at the age of twenty-one years to transfer to him or her an equal share of that third of his residuary estate, according to the number of that sister's children, together with any accumulation of income therefrom.

A similar disposition of another third of the residuary estate was made for the testator's sister Julia A. Smith and her children, and the executors were directed to pay and apply the whole or so much as should be necessary of the net income of the remaining third to the support and maintenance of the testator's nephew Henry Anton Schroeter, son of his deceased sister Mary, until he should arrive at the age of twenty-one years, and (adopting the language of the will)

"Upon his arriving at that age, or in case of his death before that period, then his children, if any, shall be entitled to and shall receive and be secured of the said one-third part of my residuary estate, and any accumulation of income therefrom."

Provision was then made that, in case of the death of either Helen J. Beeton, Julia A. Smith or Henry Anton Schroeter without issue, the share of the residuary estate which should be held in trust for the benefit of the person or persons so dying should be held in trust for the survivor or survivors " of said parties so entitled to my residuary estate, and in the same manner as hereinbefore provided " &c.

Authority was given to the executors to sell real estate, " if and whenever in the management of my estate it is deemed advisable, in their discretion."

By the codicil the testator amended the provisions of his will treating of the trust of the residue of his estate by the following direction :

"Before any application of said net income from my estate, as provided in said subdivisions, is made to the parties therein mentioned, my said executors and trustees shall pay from the whole income of my estate any mortgage upon

Beeton *v.* Simpson.

the property in Third street, Jersey City, I own, or any legal encumbrances on any part of my estate that may be a charge thereon, which said mortgage and encumbrance shall be paid and satisfied and canceled of record, and thereafter the net income arising from my estate, so devised by the third clause of my said will, shall be applied and paid in the manner therein provided by the said second, third, fourth and fifth subdivisions of said third clause of said will."

The bulk of the testator's estate consisted of real property. The property in Third street, Jersey City, mentioned in the codicil, was subject to a mortgage of $3,000, and the other properties were encumbered by municipal liens for unpaid taxes. The executors, in pursuance of the power of sale conferred upon them, have sold all the real estate, paying all the encumbrances out of the proceeds of sale, and have invested the remainder of the proceeds of sale after such payments. They have not paid their *cestuis que trust* any of the income of the estate, but have insisted upon accumulating it until they can add to the principal of the residuary estate the amount they have expended from it in paying the encumbrances. The complainants are the testator's two sisters, Helen J. Beeton and Julia A. Smith, and their children, who are infants, represented by their respective mothers as their next friend, and Henry A. Schroeter, an infant, by his father as his next friend. They insist that by the testator's direction, the encumbrances should be paid out of the " whole income " of his estate, he meant not only a payment out of the produce of the principal of the estate, but also a payment out of that which the executors might realize by the exercise of their power of sale, and that the payment already made by the executors is in compliance with the requirements of the will in respect to the encumbrances, so that the net income from the moneys invested may now be paid to them. The object of the suit is to compel that payment. If the executors accumulate the net income for a little more than two years they will be able to replace the moneys expended by them in the payment of the encumbrances; hence, it is apparent that the successful issue of this suit will, in all probability, result in benefit only to those who are entitled immediately to the income and in detriment to those who shall come after them. This condition of affairs makes it

obviously improper for the children of Mrs. Beeton and Mrs.. Smith to be joined as complainants, especially as each of them is. represented by his or her mother, having antagonistic interest, as. *prochein ami.* It would be much more fitting that those children should be made defendants with the executors. It may also be· a grave question, whether the interests of the infant complainant Henry A. Schroeter would not be better subserved by allowing· the income of his third now to accumulate. However, no objec- tion has been made to the bill on this score, and, as the defence by the executors presents all that could be urged in behalf of the infants if they were defendants represented by disinterested guardians, the court need not stay the suit to ascertain if the in- fants' real interest was consulted in placing them in their pres- ent position.

The scheme of the testator was to establish a continuing trust· for the benefit of his living sisters and their children and the· child of his dead sister. He devoted to this purpose the residue· of his estate as the will stood before the execution of the codicil.. That residue would consist of the remainder of his personal! estate after the payment of his debts, specific and pecuniary lega- cies and administration expenses, and his equity or interest in his. real estate above the encumbrances upon it. Upon the sale of the real estate it would be proper for the executors or trustees to· pay the encumbrances out of the proceeds of sale. This being the situation made by the will, he proceeded to make a codicil.. It plainly appears upon the face of the codicil that the encum- brances upon his real estate had been the subject of his considera-· tion, and that he determined that they should be paid. His first step was to stop the payment of the net income until his purpose was accomplished. " Before any application of said net income,"' he said, " my executors * * * shall pay " the mortgage· and other encumbrances. Then he declared the source from which the payment was to come : " From the *whole income* of my· estate;" and, after the encumbrances should be thus paid and, canceled of record, he released the net income and directed that it should be applied in the manner provided in the will.. The net income was thus to participate in the payment. It was to be·

Beeton.*v.* Simpson.

part of the "whole income" out of which the encumbrances were to be paid. In his will he had defined the meaning of "net income" as the "rents, interest, issues and profits after paying taxes and expenses." The "whole income," in contradistinction to this, naturally was to be the rents, interest, issues and profits, without the subsequent qualifying clause, or, in other words, that which is commonly called gross income.

Besides, the testator's direction, in the will, that the trustees should hold the trust properties and invest the proceeds of sale of them, or any of them, upon bond and mortgage, plainly indicates that he regarded such proceeds as part of the principal of the residue of his estate, sacred to the trust, and not as income.

The fact that the executors have paid the encumbrances out of the principal, the proceeds of the sale of the real estate, will not avail the complainants in this suit. The trustees had no power by an act of theirs to defeat the purpose of the testator. He meant that the principal of the trust fund should be the value of his estate after the encumbrances upon it should be paid, and that it should be made up to that value by an accumulation of the income sufficient to pay the income, and the executors could not defeat this purpose, even if they designed to do so, by paying the encumbrances from the principal. The course pursued by the executors in using a portion of the principal in primarily paying the encumbrances, does not injure the *cestuis que trust;* for while it temporarily uses principal and destroys its power to directly produce income, that very use indirectly produces income by saving interest in the application of the principal used to the satisfaction of interest-bearing encumbrances.

The complainants are not entitled to the relief they ask, and their bill must therefore be dismissed.